PENDLETON, President.
Delivered the resolution of the court to the following effect:
In January 1788, Banister gave his bond payable to Donald, Fraser and company for ^200, the supposed balance of dealings of Banister with that company, and another mercantile house of Robert Donald and company, blended together; in both which Simon Fraser was the active partner, and as such took the bond.
In 1793, Murchie assigned this debt, with a large number of others due to Donald, Fraser and company, to James Fraser as-signee of Thomas Fraser and company of Britain, for a large debt due to them from Donald, Fraser and company; which debts James Fraser appointed the Maitlands to collect, who sued Rose the executor of Banister, upon the bond in the name of James Fraser as assignee as aforesaid. Rose confessed judgment, reserving his equitable defence; and filed this bill stating, that Banister’s bond, intended to include the balance due to both companies, was taken, without settlement, for a conjectural sum, far exceeding the real balance. He therefore prays an injunction ; that the accounts may be adjusted, and the real balance paid.
Upon the several answers coming in, a replication is filed, and depositions taken. An order was made by consent, referring it to a commissioner to settle the accounts between the parties. Commissioner Hay reports the settlement, stating a balance of ¿41. 3. 7. to be due from Banister’s estate, *unless the estate was entitled to a credit of ¿83. 5., for a slave and two sows, purchased by Simon Fraser at a public seal of that estate. If that was allowed, the balance of ¿43. IS. would be due to the estate, with interest from April 1790.
To this article, the dispute between the parties is confined: All other parts of the report being submitted to.
The facts are, that Simon Fraser was'the acting partner of both companies; that, with him, the extensive dealings of Banister were transacted; and all the other articles, credited in the company’s account, delivered to him or his order; and no account subsisted between them in the individual character of Fraser. And that,Fraser, at the public sale, purchased the articles, which are charged to him, without any agreement or even conversation, about the application of the money.
Bander, who acted as clerk at the sales, says, he expected the amount was to be credited in the company’s accounts, not then liquidated, and gives his reasons. *359 That the sales were upon credit, the purchasers giving bond and security; which was generally given, except where the executor allowed discounts to creditors. That he took the other bonds, and was not directed to take Frasers; nor was one required, as far as he knows, or believes.
M’Donald says, that the slave purchased was always kept at Fraser’s plantation, and considered as his property, until he and other slaves, were conveyed, in a deed of trust from Fraser, to the Maitlands and others.
Upon these facts the commissioner reported his opinion in favour of the amount being charged to the company; and the Chancellor in his first decree confirmed it, making the injunction, to the judgment on the bond, perpetual; and decreeing the defendant to paj' the £43. IS., with interest *from April 1790, (the day of payment for the sales) and costs. Upon a rehearing, by consent as on a bill of review, the credit was disallowed; the injunction dissolved, as to the £41. 3. 7., interest and costs; and perpetuated as, to the residue. The appeal is from the latter decree.
The rule, that the private debt of a partner cannot be set off against a company debt, does not apply; since the question is, whether, it was such a private debt, or a payment, of the company’s debt to that partner, who, it is agreed, had authoritj' to receive it?
In Scott and Trent in this court,* the articles, for which the discount was claimed, were confessedly delivered to the acting partner, on his private account; and, on a state of them, it was indorsed, that, when_ settled, the balance was to be credited in’ the companys account. That private account had not been adjusted, so as to fix the balance; and, on that ground, the discount was not allowed. But even there, the court said, Scott might be relieved in equity. We are in that court.
In considering this subject, the court viewed the situation and practice of the country, as to the present subject. Simon Fraser, or any other man, is the ostensible merchant opening a store, for retailing goods and purchasing commodities: It is the store, which gives him credit, and that is answerable for any commodities furnished, whether it belongs to him alone, or to a company of which he is a partner, or for whom he acts as factor. True it is, if the company fails, the creditor may resort to the agent or factor, on the common principle of master and servant, where both are liable. As to the article furnished not being within the nature of the trade, how is the planter to know *the objects of the trade? He takes goods, and, to pay for them, sells the merchant whatever he is willing to receive; tobacco, wheat, a horse, a slave, or any thing else, for which he is usually credited in the store' books, without enquiry for whom purchased, or how applied. Here the slave was sold to Fraser, still the acting partner, and no bond was required, as in the case of a creditor. He was nota creditor; in his private character, but as a partner of the company; and, in the store book, the estate was entitled to a credit for the amount; which leaves the estate a creditor of Donald, Fraser and company, for £43. IS. ; to whom, or to Simon Fraser’s estate, the executor of Banister may resort for satisfaction ; but he has no claim, as to that, upon the defendant James Fraser; although he is bound, so far as the debt assigned him was paid.
The last decrees are to be reversed with costs, and the first affirmed.

1 Washington's Rep. 77.